**HOVING CORPORATION, a corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 343, Docket 26664.

United States Court of Appeals
Second Circuit.

Argued April 19, 1961.

Decided May 25, 1961.

**804**

Stanley J. Moss, New York City (Mnuchin & Smith and Harry K. Smith, New York City, on the brief), for petitioner.

Thomas F. Howder, Atty., F. T. C., Washington, D. C. (PGad B. Morehouse, Acting Gen. Counsel, Alan B. Hobbes, Asst. Gen. Counsel, and John W. Carter, Jr., Atty., F. T. C., Washington, D. C., on the brief), for respondent.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

SMITH, Circuit Judge.

Hoving Corporation is a large scale, high volume retailer of women's wearing apparel and accessories; it trades under the name "Bonwit Teller" in New York, Chicago, Cleveland and other large cities. In August of 1958 a complaint was filed against it charging violations of the branding, invoicing and advertising sections of the Fur Products Labeling Act, 15 U.S.C.A. § 69 et seq. Counsel for the Commission later moved to amend the complaint to add further alleged violations (both prior and subsequent to the date of the original complaint); the Hearing Examiner denied the motion. Although counsel for respondent failed to appeal that ruling within the prescribed period, they later obtained leave from the full Commission to amend the complaint through a collateral certification proceeding.

After a full hearing, the Examiner found that petitioner had committed numerous violations of the Act. On appeal, the Commission adopted his findings and ordered petitioner to cease and desist from (1) misbranding furs as to all particulars enumerated in § 4(2) of the Act, 15 U.S.C.A. § 69b(2); [1] (2) falsely or de-

---

1. "Sec. 4. For the purposes of this Act, a fur product shall be considered to be misbranded—

\* \* \* \* \*

"(2) if there is not affixed to the fur product a label showing in words and figures plainly legible—

"(A) the name or names (as set forth in the Fur Products Name Guide) of the animal or animals that produced the fur, and such qualifying statement as may be required pursuant to section 7(c) of this Act;

"(B) that the fur product contains or is composed of used fur, when such is the fact;

"(C) that the fur product contains or is composed of bleached, dyed, or otherwise artificially colored fur, when such is the fact;

"(D) that the fur product is composed in whole or in substantial part of

ceptively invoicing fur products as to the information covered by § 5(b) (1) of the Act, 15 U.S.C.A. § 69c(b) ;[2] and (3) falsely and deceptively advertising in violation of five specific requirements of § 5(a), 15 U.S.C.A. § 69c (a).[3]

Petitioner here claims that the Commissioner erred in permitting a collateral attack on the Examiner's denial of the motion to amend the complaint. Further, that Hoving was wrongfully denied an exemption, pursuant to Rule 39, 16 C.F.R. § 301.39,[4] from compliance with the re-

quirements of the Act. Alternatively, it asserts the invalidity of "that portion of the rule" limiting the scope of the exemption because the Commission, in promulgating the rules, failed to include a "concise general statement" of the basis and purpose of the regulations. Finally, Hoving urges that the evidence in the case does not support such a broad cease and desist order.

 Evidence was submitted before the Commission showing violations of all three general categories of the

paws, tails, bellies, or waste fur, when such is the fact;

"(E) the name, or other identification issued and registered by the Commission, of one or more of the persons who manufacture such fur product for introduction into commerce, introduce it into commerce, sell it in commerce, advertise or offer it for sale in commerce, or transport or distribute it in commerce;

"(F) the name of the country of origin of any imported furs used in the fur product;" 65 Stat. 177, 15 U.S.C.A. § 69b.

2. "Sec. 5(b). For the purposes of this Act, a fur product or fur shall be considered to be falsely or deceptively invoiced—

"(1) if such fur product or fur is not invoiced to show—

"(A) the name or names (as set forth in the Fur Products Name Guide) of the animal or animals that produced the fur, and such qualifying statements as may be required pursuant to section 7(c) of this Act;

"(B) that the fur product contains or is composed of used fur, when such is the fact;

"(C) that the fur product contains or is composed of bleached, dyed, or otherwise artificially colored fur, when such is the fact;

"(D) that the fur product is composed in whole or in substantial part of paws, tails, bellies, or waste fur, when such is the fact;

"(E) the name and address of the person issuing such invoice;

"(F) the name of the country of origin of any imported furs or those contained in a fur product;" 65 Stat. 178, 15 U.S. C.A. § 69c(b).

3. "Sec. 5(a). For the purposes of this Act, a fur product or fur shall be considered to be falsely or deceptively ad-

vertised if any advertisement, representation, public announcement, or notice which is intended to aid, promote, or assist directly or indirectly in the sale or offering for sale of such fur product or fur—

"(1) does not show the name or names (as set forth in the Fur Products Name Guide) of the animal or animals that produced the fur, and such qualifying statement as may be required pursuant to section 7(c) of this Act;

"(2) does not show that the fur is used or that the fur product contains used fur, when such is the fact;

"(3) does not show that the fur product or fur is bleached, dyed, or otherwise artificially colored fur when such is the fact;

"(4) does not show that the fur product is composed in whole or in substantial part of paws, tails, bellies, or waste fur, when such is the fact;

"(5) contains the name or names of any animal or animals other than the name or names specified in paragraph (1) of this subsection, or contains any form of misrepresentation or deception, directly or by implication, with respect to such fur product or fur;

"(6) does not show the name of the country of origin of any imported furs or those contained in a fur product." 65 Stat. 178, 15 U.S.C.A. § 69c(a).

4. 16 C.F.R. § 301.39. "(a) Where the cost of any manufactured fur or furs contained in a fur product, exclusive of any costs incident to its incorporation therein, does not exceed five dollars ($5.-00), or where a manufacturer's selling price of a fur product does not exceed five dollars ($5.00), and no express or implied representation is made concerning the fur contained in such product * * * the fur product shall be exempt from the requirements of the act and regulations: * * *"

Act—misbranding, false invoicing and deceptive advertising. One group of violations cutting across all categories concerned the marketing of bleached white mink muffs and mink "sets" (muff, hat and ascot choker). The fur pieces were made from waste fur of mink tails, flanks, bellies, etc.—and Bonwit Teller nowhere informed its customers of that fact.[5] On the invoice, the only document likely to be retained by the customer, the petitioner failed to inform the buyer that the fur had been bleached. Hoving argues that the broad order surely cannot be supported by only one proven instance of misbranding of a mink muff. Although Commission investigators actually bought only one muff, the uniformly misleading advertising—and the invoicing violations—on that item support the inference that many of the waste fur mink muffs and sets were sold similarly mislabeled.

The greatest number of violations shown were in petitioner's advertising copy. Most of those involved the failure to use properly the Fur Products Name Guide, 16 C.F.R. § 301.0, or to identify the country of origin of the fur producing animal. Petitioner's principal argument is that the majority of violations were "technical" and "trivial" ones and that the Commission abused its discretion in the breadth of its order.

■ Administrative agencies have great discretion in framing their orders and are empowered to enjoin related unlawful acts which may occur in the future; there must merely be a reasonable relationship between the facts found and the breadth of the order issued. Federal Trade Commission v. Mandel Brothers, Inc., 1959, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893; National Labor Relations Board v. Express Publishing Co., 1941, 312 U.S. 426, 436, 61 S.Ct. 693, 85 L.Ed. 930. The court, at first glance, might be tempted to agree with petitioner that some of the violations found below are trivial ones not deserving of overly broad prophylactic relief. It is difficult to imagine an area of expert and technical competence, however, where it would be less seemly for this court to second guess an administrative tribunal concerning the seriousness of offenses.

■ Although petitioner urges upon us the Supreme Court's apparent reliance on a numerically impressive list of offenses while affirming a broad injunctive order in F. T. C. v. Mandel, supra, footnote 8 at page 393 of 359 U.S., at page 824 of 79 S.Ct., we do not think the number of violations proved in every case should be the sole determinant.[6] The failure to inform the public of the use of waste furs in its labeling, invoicing and advertising is probably a more serious breach of the Act than any of those found in Mandel. The more than a dozen violations characterized as minor by petitioner support the inference that Hoving has been generally rather lax in conforming to the requirements of the Act. If the courts were to start indiscriminately whittling away at the "sentences" of administrative agencies, they would soon be inundated with such requests. We cannot in each case substitute our judgment for that of the Federal Trade Commission; the facts of the instant case do not present the clear abuse of discretion necessary to warrant modification of the administrative order.

5. The muff was labeled a "Bleached White Mink Plate." Petitioner offered proof that "in the trade" "plate" was snyonymous with waste fur from tails, bellies and flanks. The Commission properly held that such labeling did not discharge the duty of disclosure imposed by the Act, designed as it was for the protection of the retail purchaser.

6. Such a numerical standard would in all probability seriously hamper the agency in its function of protecting the virtually defenseless modern consumer. See Gibney, The Operators, Chapter 2 (1960). If the Commission, to justify a broad order, had to obtain direct evidence of large numbers of labeling and invoicing violations, the strain on the always somewhat inadequate investigatory arm of the agency would be increased tremendously. It is probably significant in this regard that direct evidence of numerous advertising violations, easily and cheaply obtainable, was produced.

There is nothing in petitioner's first three points. Hoving was adequately put on notice as to the charges against it in the proceedings below. The Commission found that the amended complaint was a proper question for the certification procedure; minus a showing of unfairness or prejudice, this court will not dictate to the Federal administrative bodies concerning minor procedural technicalities.

The Commission, in making rules for the Fur Products Labeling Act, followed the procedures of Section 4 of the Administrative Procedure Act, 5 U.S. C.A. § 1003. Notice of public hearing on the proposed regulations was published in the Federal Register on May 3, 1952, 17 Fed.Reg. 4121 (1952). Interested parties were heard both orally and through submission of written material; among the subjects discussed was the exemption here in question. Regulations so promulgated will not be declared void [7] merely because of a purely technical flaw in failing to include *within the Rules themselves* a "concise general statement" of basis and purpose, 5 U.S.C.A. § 1003 (b); Courtaulds (Alabama) Inc. v. Kintner, D.C.D.C.1960, 182 F.Supp. 207, 212. Both the basis and purpose are obvious from the specific governing legislation and the entire trade was fairly apprised of them by the procedure followed.

The manufacturer's price of the furs contained in the mink muffs in issue here was less than $5.00. Petitioner claims that therefore it was entitled to the Rule 39 exemption from the disclosure requirements of the Act. The Commission held however that the exemption was inapplicable because Hoving had made "representations" concerning the furs, supra footnote 4. Petitioner urges that representations should be interpreted as *mis*representations, of which it asserts its innocence. We think that the Commission was correct in its interpretation. The exemption may have been in-

tended to allow fur accessories, collars, sleeves, etc., to avoid the full disclosure requirements of the Act—if the accessories were made up of cheap fur and marketed without any separate representations as to the fur. Even if such an interpretation were erroneous certainly the advertising and sale of a "mink muff" without effective notice that it was made of waste fur qualifies as a *mis*representation.

Affirmed.

**7.** Petitioner rather strangely contends that only the limitation on the exemption is void. If proper rule making proce-

dures had not been followed, all of the rules would be nullified, including the exemption upon which petitioner relies.