**RICHARDS CONSTRUCTION COMPANY et al., Appellant,**

v.

**AIR CONDITIONING COMPANY OF HAWAII, Appellee.**

No. 17748.

United States Court of Appeals
Ninth Circuit.
May 27, 1963.

A. William Barlow, Honolulu, Hawaii, and Sandler & Rosen, Beverly Hills, Cal., and H. William Burgess, Honolulu, Hawaii, for appellant.

Smith, Wild, Beebe & Cades, James S. Campbell and Robert B. Bunn, Honolulu, Hawaii, for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This is an action for breach of contract. Defendants, appellants here, are Richards Construction Company—Kaneohe Bay Project, a general partnership, its members, and its bonding company. The construction company became the general contractor for the construction of certain housing units at the United States Marine Corps Air Station at Kaneohe Bay, Oahu, Hawaii. Appellee, plaintiff in the trial court, is a subcontractor. Jurisdiction rests upon diversity of citizenship, upon the Miller Act (40 U.S.C. § 270b) and upon 28 U.S.C. §§ 1352 and 1331.

The action was tried by the court, and it made detailed findings, upon which no serious attack is made by appellants. Our statement of facts is taken largely from the findings. Invitations for bids to construct the project were distributed on December 4, 1957, calling for bids to be opened on January 31, 1958. Appellant (as used hereafter this term means the general partnership) was interested in bidding. On January 20, 1958, it advertised for bids from subcontractors. Its address in California was given, and it was also stated that a representative of appellant would be at the Surfrider Hotel, Honolulu, on January 28, 29, 30 and 31. In response to this advertisement appellee filed a bid on the sheet metal work for the project with the General Contractors Association of Hawaii on January 30, and on that day or the next, telephoned the bid to Richards, appellant's general manager, at the Surfrider. The amount of the bid was $48,733. This was the lowest bid appellant had received for the work,[1] and Richards reconfirmed it by phone to appellee, stating that he was using appellee's figure in appellant's bid for the job. Richards then reduced appellant's bid for the whole job by the difference between $83,000, the next lowest bid received on which Richards had figured the job, and appellee's bid, and submitted a bid for the whole project on January 31. Ap-

---

[1] Appellant had two other bids, $173,395 and $83,277. Appellant's architect had estimated the work at about $16,000.

pellant became the low bidder and was awarded the general contract, for $8,794,085.

The 31st was a Friday. Appellee, on Sunday, February 2, having learned that Richards was the successful bidder, rechecked its figures and discovered that its estimator had made an error, calculating the bid upon galvanized sheet metal instead of zinc alloy, which was called for. This made a substantial difference in appellee's material costs. On February 3, appellee attempted to reach Richards at the Surfrider, but he had returned to the mainland. Appellee made no attempt to reach appellant in California. Appellee's bid was made with the knowledge and expectation that appellant would use it, and it was not expressly made revocable, nor was the time during which it would remain open limited in any way.

Nothing more occurred until a month later, when Richards returned to Hawaii. On March 6, appellee's sheet metal foreman told Richards that appellee had made the mistake described above, and that appellee would like to withdraw the figures. Richards "blew up." Next day, he saw Quealy, appellee's general manager, who said appellee would not do the job at the bid price. On March 11, appellant, by letter, formally accepted appellee's bid at the $48,733 figure. On March 25, appellee replied that it was under no contractual duty to proceed, and that its offer had been withdrawn.

There followed, beginning about April 1, negotiations looking to the use of copper on the job, with the permission of the Navy, at a price of $96,000. Appellant, on July 14, wrote to the Navy suggesting such a change, which was refused. There then followed some hard bargaining between the parties, characterized, as the court found, by mutual misrepresentations and deceptions, by means of which appellant tried to get appellee down to the lowest possible figure for the job as originally specified, and appellee tried to get the highest price it could. The court found that the two men directly involved had been no more frank with it than they had been with each other. At any rate, the negotiations continued from mid-July well into September, and the parties finally agreed on a price of $62,000.[2] Appellant then prepared, and on September 29 both parties signed, a contract at that price. The contract made no reference to the previous bid or its acceptance; the only work called for was that on which appellee had originally bid $48,733.

Richards at no time intended to pay the full $62,000. His intention was to pay only so much as would keep appellee at work until the job was done, and, if possible, no more than the original bid price. Appellee completed the job, satisfactorily. It was necessary for appellant to pay $50,582 to keep appellee from realizing, before it completed the job, that it would not get the $62,000. At that point, appellant stopped paying. Appellee then brought this action for the balance of the $62,000, plus one small item of extra work, and appellant counterclaimed for $1,849, which, it says, it overpaid to appellee.

The trial court first found and concluded that there was a binding contract between the parties to do the work for $48,733. It found that appellee knew that appellant wanted the bid to use as a basis for its own bid to the Navy, and that appellant did so use it. This, said the court, was a sufficient change of position, to appellant's detriment, to be a consideration for, and a substitute for acceptance of, the offer embodied in appellee's bid. The court relied upon Restatement, Contracts, § 45 and comment b, and § 90 (1932), and such cases as Drennan v. Star Paving Co., 1958, 51 Cal.2d 409, 333 P.2d 757. The parties

---

2. The lowest bid appellant had been able to get from others was $79,889. Appellee offered to do the job for $68,761. Appellant then told appellee that it had a figure of $62,000. This was false. Appellee agreed to do the work for that figure, Quealy stating that it was "at cost," and that he felt a moral obligation to proceed at that figure. The court did not believe Quealy either.

agree with this conclusion, and we therefore accept it without considering whether all of the reasoning of the court was correct. We doubt the applicability of § 45 of the Restatement, which deals with an offer for a unilateral contract. We do not know whether the Supreme Court of Hawaii would, in a case such as this, follow § 90, or the California case relied upon. (Compare the views of Learned Hand in James Baird Co. v. Gimbel Bros., 2 Cir., 1933, 64 F.2d 344) We prefer to leave these questions to that court, and to rest our decision upon the parties' acquiescence in the decision that there was a binding contract between them.

While we think that the evidence would also support a finding that appellant should have known that appellee's bid was probably arrived at by mistake (see footnote 1, supra), the court did not so find. Rather, it found, and we think the evidence, which is conflicting, supports the finding, that appellant did not know of the mistake until Richards was told about it on March 6.

Relying on the court's determination that there was a binding contract, appellant urges reversal on the ground that the September 29 contract was nothing more than a promise by appellee to do, at a higher price, what it was already bound to do at a lower one, and that appellant's promise to pay the higher price was without consideration. Reliance is upon the decision of this Court in the old case of Alaska Packers' Ass'n v. Domenico, 9 Cir., 1902, 117 F. 99, the Hawaii case of Magoon v. Marks, 1899, 11 Hawaii 764, and 1 Williston, Contracts §§ 130, 130A (3 ed. 1957). Also cited are Lingenfelder v. Wainwright Brewing Co., 1891, 103 Mo. 578, 15 S.W. 844, and Power Service Corp. v. Joslin, 9 Cir., 1949, 175 F.2d 698.

*Alaska Packers* was a classic case for the application of the rule. There, there was no dispute as to whether a contract had been made. It was being performed when the parties on one side, at a time and place when and where it was impossible to replace them or to do the work without them, announced that they would do no more work unless they were paid more than the agreed amount. Upon being promised more pay, they returned to work. This Court quite properly held that the new promise was without consideration and not enforceable. There was clearly no consideration, and the actions of the promisees were such as to amount to extortion.

Here, the court declined to apply the rule of *Alaska Packers*. As we have seen, it found that appellee did make a mistake in its bid, although it failed to notify appellant before the latter's acceptance, which, the court found, occurred "certainly by March 6," the day on which appellant was told about the mistake. Thus, although it is now established, after a trial in which the court had to sift much conflicting testimony, that appellee's bid did ripen into a contract, it was by no means as clear, at the time, that there was such a contract. Appellant maintained that there was, appellee maintained, just as firmly, that there was not.

The subsequent negotiations, first looking toward a contract calling for different materials, and then looking toward having the job, as originally specified, done at a new price, as to which there was "hard bargaining," are consistent with the idea that appellant was not at all sure that it had a binding contract, however firmly it asserted that position. As the court found, and as Richards testified, appellant was seeking to limit its exposure—"any possible loss that [appellant] * * * might incur as the result of this matter"; it was important to get appellee down to as low a figure as possible (from $68,000 to $62,000) "[b]ecause if [appellant] * * * lost—," at which point there was an interruption in the testimony. In other words, while it was appellant's intention, having bargained appellee down as far as it could, to stand suit, as it has done, it wanted its liability, over the $48,733 figure, to be as small as it could be made, if appellant lost. As the court found, appellant "was compromising its dispute

with the [appellee] * * * solely for the [appellant's] * * * benefit." It concluded that there was consideration to appellant for the new promise of September 28, to pay $62,000. We think that the record supports this conclusion, and that what happened, in substance, was a mutual surrender, by the parties, of their antithetical positions, in exchange for a new, formally executed, complete and binding contract.

We need not, and do not, apply the rule applied in certain cases cited by the trial court, to the effect that a party to a contract has a choice, when confronted by a naked demand for more money, between rejecting the demand and suing for his damages, or assenting to the demand, in which case he will be bound. We rejected this idea in *Alaska Packers*. The differentiating factor here is that there was a dispute as to whether appellee was bound. A settlement of that dispute involves the giving of new considerations by both parties. By proposing and signing the new contract, Richards manifested to appellee (whatever Richards' mental reservations may have been) a giving up of appellant's position that there was already a binding contract. This was a new consideration by Richards to appellee. At the same time, appellee gave up its position that it was not under any duty to appellant, both by reason of lack of timely acceptance of its bid and by reason of the mistake in its bid, a position which was not determined to be invalid until this case was tried and decided, and became bound by a contract that was not subject to these defects. This was a sufficient consideration by appellee. Generally speaking, a contract to settle a genuine dispute is binding; the law favors such contracts; this was such a contract.

The court was critical of both parties, but it did not find either that appellant acted in bad faith in claiming that it had a contract or that appellee acted in bad faith in claiming that it did not. Under these circumstances, we think that appellant's efforts to compromise were legally successful, and that its efforts,

both in the trial court and here, to repudiate that compromise should not succeed. Appellee's mistake, we think, places the equities, so far as there are any, on its side, not on that of appellant. The latter still got the job satisfactorily done, at a far lower price than it could have obtained from anyone else.

The courts of Hawaii have not, so far as we can find, passed upon the question here presented, but we think that our decision is in accord with the spirit of the decision in Ahlo v. Tai Lung, 1893, 9 Hawaii 272, 278–279. To apply the rule of *Alaska Packers*, supra, here under circumstances so different from those in that case, would, in our opinion, be unduly harsh and technical, and we decline to do so.

Affirmed.