529 F.2d 943
 12 Fair Empl.Prac.Cas. 178,
11 Empl. Prac. Dec. P 10,634
Erin VAN BRONKHORST et al., Plaintiffs-Appellees,
Equal Employment Opportunity Commission, Intervenor-Appellant,
v.
SAFECO CORPORATION, through its subsidiary insurance
companies et al., Defendants-Appellees.
 No. 75--1735.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 16, 1976.
 
 Marian Halley (argued), EEOC, Washington, D.C., for intervenor-appellant.
 Elizabeth J. Bracelin (argued), Seattle, Wash., J. David Andrews (argued), Seattle, Wash., for plaintiffs-appellees.
 
 OPINION
 
 1
 Before KOELSCH and TRASK, Circuit Judges, and PALMIERI,* District Judge.
 
 
 2
 PALMIERI, District Judge.
 
 
 3
 This is an appeal by plaintiff-intervenor Equal Employment Opportunity Commission (EEOC or Commission) from an order dismissing it with prejudice 'except for the administration of any Consent Decree entered' in the case. This action was filed in August 1972 by private plaintiffs alleging sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Supp. II, 1972). Certifying that the case was one of general public importance, the EEOC moved for leave to intervene[1] as a plaintiff in March 1973. Intervention was permitted by order of the District Court in June 1973. Following a motion by the private plaintiffs, supported by the Commission which promised to shoulder a large portion of the burden of managing the litigation, the suit was certified as a class action pursuant to Rule 24(b)(2), Fed.R.Civ.P., in July 1974. The scope of the class defined by the court was a very large one and included a nationwide class defined as 'all present female employees * * * all past female * * * employees who have terminated employment since September 1969 and all female applicants for jobs * * * since January 1, 1973.' The Commission gave unqualified assurances to the court that it was able and willing to assume management of any relief ordered by the court[2] for this large, nationwide class, and pledged its impressive resources to this end.
 
 
 4
 After the successful intervention of EEOC and during the entire period of its participation in the litigation, one of its chief trial attorneys was assigned as its attorney of record. The large number of persons affected by the litigation, the extensive and diverse geographical areas involved, the lengthy period of time covered by the lawsuit and the nature of the evidence relevant to the issues, made the case one of considerable difficulty and complexity. The discovery undertaken was expensive and voluminous. It was energetically litigated and required the appointment of a special master. The District Court was justifiably concerned with the management problems posed by this litigation. The trial was expected to take at least three months. Following a motion by the private plaintiffs and the EEOC, it was ultimately set for December 16, 1974, and the trial judge reserved the three month period for the trial.
 
 The Factual Background of the Controversy
 
 5
 The situation which has precipitated this appeal arose within the context of settlement discussions. The discussions had begun in July 1974, and plaintiffs' and defendants' counsel had succeeded in agreeing upon a proposed consent decree by November 17, 1974.[3] The EEOC was represented throughout the negotiations, actively participated in all phases of the discussions, and succeeded in conforming parts of the proposed decree to suit its interest. However, despite the professed satisfaction therewith by legal representatives of the EEOC, including the attorney of record, the settlement itself was in jeopardy because of the lack of formal consent by the EEOC--in effect the office of its General Counsel in Washington, D.C. In consequence, the District Court found itself on November 18, 1974, in a very unhappy position. It was faced with a commitment to undertake this lengthy and complex trial within less than one month, with discovery suspended and incomplete, and with the private plaintiffs and the defendants in accord regarding settlement but with counsel for the EEOC representing themselves to be without authority to commit the agency to a definitive position. On that date, all counsel, including the EEOC lead counsel, met with the district judge. In an effort to have the EEOC commit itself to a position on the settlement, counsel for the plaintiffs and defendants urged the judge to sign an order to show cause, returnable in one week, requiring the General Counsel for the EEOC or someone with authority to bind the EEOC to appear before the court and show cause why it should not execute the Consent Decree. The judge signed such on Order.[4] It was clear to those present that this was intended to require the EEOC to have someone appear before the court who had authority to bind the EEOC.
 
 
 6
 This Order was served on the EEOC General Counsel on November 19. During that week the EEOC lead counsel in this case, who had been present at the signing of the Order, went to Washington, D.C. with one of the attorneys for the plaintiff class to talk with EEOC officials. The General Counsel did not meet with the them. The judge spoke by telephone with the General Counsel on November 22nd and 23rd and obtained an indication of his willingness to appear in court if the local EEOC representative so requested. However, on the return date, November 25, neither the General Counsel nor an agent with authority to bind the EEOC appeared. The court then advised the Commission that it had failed to comply with the court's Order, requested it to communicate with its General Counsel to tell him to appear the next day and took under advisement a motion to hold the EEOC in contempt.
 
 
 7
 Again, on November 26, neither the General Counsel nor an agent with authority to bind the EEOC appeared. The District Court found that the Commission had failed to comply with its order and that its non-compliance warranted the Commission's dismissal from the lawsuit. Thereupon the District Court entered its order of November 26, 1974, providing for the provisional dismissal which is the basis for this appeal.[5]
 
 
 8
 The District Court later filed findings of fact and conclusions of law on December 20, 1974, a part of which are worth quoting because they plainly describe the painful dilemma in which the court and the counsel for the private parties found themselves.[6]
 
 
 9
 The EEOC argues that the District Court dismissed it with prejudice for failing to sign a consent decree and that this was error because the court could not force it to sign a consent decree. The EEOC further argues that, if it has been properly dismissed, the court lacks jurisdiction to order it to administer the consent decree.
 
 
 10
 The appellees admit that the court has no authority to force the EEOC to sign a consent decree, but argue that the EEOC was properly dismissed with prejudice for failure to obey a court order. They further argue that estoppel and the inherent power of the court to regulate litigation and effectuate its decrees are sufficient authority for the court to retain jurisdiction over the EEOC and to require it to manage a settlement fashioned in reliance on its repeated promises of administrative assistance.
 
 
 11
 The District Court Properly Dismissed the EEOC Wity Prejudice
 
 
 12
 There is no question that a District Court has the power to dismiss a claim of a plaintiff with prejudice for failure to comply with an order of the court. Fed.R.Civ.P. 41(b);[7] Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Von Poppenheim v. Portland Boxing & Wrestling Commission, 442 F.2d 1047 (9th Cir.), cert. denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1971). A fortiori, this is the case where the plaintiff concerned is but one of several, has no financial interest in the outcome of the litigation and is simply aligned with other plaintiffs who do. It is equally clear that the district judge's determination that his order was not complied with is entitled to considerable weight on appeal since he is in the best position to assess the circumstances. Von Poppenheim, supra, 442 F.2d at 1051; Industrial Building Materials, Inc. v. Interchemical Corp.,437 F.2d 1336 (9th Cir. 1970). The district judge will be reversed only if he has abused his discretion in dismissing the claim. Link, supra; Industrial Building Materials, supra.
 
 
 13
 This was an appropriate case for dismissal by the District Court. Both the intervention of the EEOC and the certification of the suit as a class action were permitted following representations by the EEOC that its presence would not delay or prejudice the adjudication of the rights of the original parties but rather would materially aid in the expeditious determination of the issues and in the management of the litigation. The EEOC played an active and significant role in the pretrial activity, including the settlement negotiations. The EEOC representatives appeared to approve of the proposed consent decree arrived at on November 17 but could not bind the EEOC. The court was anxious to have the matter of settlement resolved. The trial date beginning the three month period had already been cleared in his calendar and the trial was less than a month away. Discovery had been suspended by agreement when the settlement negotiations became critical, and would require completion before the trial in the event an accord was not reached. The court was operating under an explicit statutory mandate to handle this Title VII case, already several years old, as expeditiously as possible.[8] Yet the EEOC, which was well aware of this pressing situation, gave no indication of a desire or intent to proceed expeditiously in approving or rejecting the settlement. The efforts of the private parties and of the court to secure the assertion of an authoritative position by the Commission proved to be in vain. The negotiations of the parties in Seattle and in Washington, D.C. with attorneys of the EEOC had the same unproductive result--none of the attorneys for the EEOC could commit the Commission to a binding position. Under the exigent circumstances with which it was confronted the District Court was plainly justified when it entered an order to show cause, upon petition of the private plaintiffs and the defendants, requiring the Commission's general counsel or his authorized surrogate, to appear on November 25, 1974. The language of the order 'to show cause, if any it has, why Intervenor should not be required to execute the Consent Decree' was unfortunate since it implies the court was seeking to compel the EEOC to consent to the decree. But it was abundantly clear from the surrounding circumstances and from the explicit explanation of the court at the hearing on November 25, 1974, that the court was seeking to solve an impasse in communication with the EEOC. It was not seeking to force its consent to a decree.[9]
 
 
 14
 Efforts to negotiate with the Commission proved fruitless on November 25, 1974. Although the Commission had four lawyers in attendance, two of them from Washington, D.C., none of them could speak authoritatively for it. The court, feeling itself unable to resolve the impasse, told one of the Washington attorneys that the Commission had not complied with the court's order and requested counsel to communicate to the EEOC General Counsel in Washington the court's desire for the presence of someone who could bind the EEOC. He stayed the motion to show cause till the same time the next day and directed counsel to remain together negotiating in the meantime any differences of the parties regarding the proposed consent decree. Although discussions did take place and a number of modifications were tentatively agreed upon, the situation remained unaltered because of the absence of an attorney who could bind the Commission. Another full hearing took place on November 26, at which the absence of an appropriate representative was again noted. The EEOC's continued refusal to accommodate the District Court was nothing more than a repudiation of the court's authority. The District Court was entitled to the effective cooperation of each party before it to resolve the problems presented by the litigation. The Commission withheld this cooperation. We have searched the record to discover an explanation and we have failed to find it.
 
 
 15
 The recital of all the actions taken by the District Court to obtain the effective representation of the Commission indicates both an extreme courtesy to the Commission and even an excessive effort in this direction. Since the Court had before it an attorney of record representing the Commission, it could have dealt with him as the authorized representative of the Commission without assuming the burdens of attempting to communicate with that attorney's administrative superior. Cf. General Rule 2(f)(3), (4), United States District Court for the Western District of Washington.
 
 
 16
 At no time did the Commission ever seek to excuse itself for the failure to attend the court hearing in the person of a responsible representative. It never asked for more time, nor did the Commission ever ask for reconsideration of the court's order of November 26, 1974, or oppose the entry of the court's findings of fact and conclusions of law of December 20, 1974. It made no motion for relief pursuant to Section 60(b), Fed.R.Civ.P., asserting surprise or misunderstanding of the Order.[10] If made no attempt whatever to accommodate the court in any fashion and presented the court purely and simply with its failure to cooperate. Bluntly stated, the Commission confronted the court by its conduct with the implicit assertion that it had the right to deal with the court on its own terms, as and when it pleased; and this, notwithstanding the pressing circumstances which impelled the court's action.
 
 
 17
 It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.[11] This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.[12]
 
 
 18
 We do not suggest that the Commission could be forced to make important on-the-spot decisions instanter and without reference to its principal office in Washington. An accommodation with the court should have been reached or, at the very least, some effort made by the Commission with this objective in mind. We deplore the Commission's uncooperative attitude towards the court and its lack of effective liaison with its own attorney of record in the case.
 
 
 19
 The Commission takes the rather simplistic view that its only fault was its failure to consent to the settlement decree; and that since it cannot be compelled to consent, the Commission should be relieved of any responsibility in the case. It urges that the District Court's order dismissing the Commission with prejudice except for its administrative duties provided for in the decree should be reversed. But the EEOC has not sought to be reinstated as a party intervenor. Indeed, it suggests on this appeal that 'since the Commission did not insist on pressing its claim, dismissal without prejudice would have been proper.' Apparently the Commission wishes to abandon this litigation, to be left free to deal another day with the same issues and possibly the same parties. We cannot indulge the Commission with any such solution. To do so would permit it to proliferate litigation and play havoc with an important suit in which it has actively engaged at its own request and to which it can still make an important contribution.
 
 
 20
 Although dismissal is a drastic action, its effects are alleviated by several circumstances in this case. First, the original plaintiffs in this action will receive relief despite the dismissal of intervenor EEOC. The primary reason that courts are reluctant to order dismissal as a sanction is because it may result in a wrongfully injured plaintiff being left with no remedy. That consideration is not present in this case. The administrative interest of the EEOC and the public interest in eradicating discrimination may be somewhat forestalled, but these interests are not dependent on this suit alone for vindication as is usually the case with dismissed plaintiffs. Second, dismissal with prejudice is necessary to effectuate the court-sanctioned consent decree since further litigation by the EEOC on the same issues could thwart this agreement. Finally, though partially dismissed, the EEOC still may apply to the court for changes in the Consent Decree, as is hereinafter indicated. All of these factors alleviate the results of the dismissal and lead us to conclude
 
 
 21
 that this action was within the discretionary power of the
 
 
 22
 trial court. The District Court Properly Ordered
 
 
 23
 the EEOC to Administer the Consent Decree
 
 
 24
 The broad and inherent power of the District Court to regulate litigation before it is supported by abundant authority and is sufficient to sustain the action of the court below. See Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). This inherent power is broader and more flexible than the authority specified in Fed.R.Civ.P. 41(b). See Link,supra; Fisher v. Pace, 336 U.S. 155, 159, 69 S.Ct. 425, 93 L.Ed. 569 (1949). This residuum of power is recognized in the final sentence of Fed.R.Civ.P. 83: 'In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.' Such District Court regulation may take the form of published local court rules. The District Court in this case had adopted a relevant though not controlling rule. General Rule 3 of the United States District Courts for the Western District of Washington provides in part:
 
 
 25
 GR 3. Expedition of Court Business--Sanctions and Penalties
 
 
 26
 (c) Failure of an attorney for any party to appear at pretrial conference or to complete the necessary preparations therefor . . . may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or the entire case.[13]
 
 
 27
 Though we are not here dealing with a pretrial conference, this rule clearly demonstrates the authority of the court to respond to noncompliance with its orders by foreclosing certain issues to the defaulting party while retaining jurisdiction over it for other issues. The hands of the District Court were not fettered by the lack of an explicit rule specifically covering the present situation because, pursuant to the court's inherent power and Fed.R.Civ.P. 83, 'when there is no Federal Rule, and no local rule, the court may fashion one not inconsistent with the Federal Rules.' Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 108 (2d Cir.), cert. denied, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966). See In re United Corp., 283 F.2d 593 (3d Cir. 1960).
 
 
 28
 There are several other factors in this case that support the District Court's actions. First there is a strong case of estoppel against the EEOC. The EEOC intervened in this suit apparently after being forestalled in its own administrative investigation of the underlying issues.[14] The numerous and repeated representations it made to obtain intervention and certification of the suit as a class action have already been noted and do not need repetition here. It is sufficient to point out that the scope of the litigation and much of the structure and detail of the Consent Decree appear to be a direct result of the EEOC's presence in the case. The District Court found that the Consent Decree's effectiveness would be jeopardized if the Commission did not carry into effect the role it had agreed to fill in the litigation. Having assumed a leading role in creating a very complex lawsuit, the EEOC should not now be allowed to upset the recovery of the private plaintiffs. Having become a litigant the Commission cannot declare itself totally independent of court control. The lower court's action was not, as the Commission appears to suggest, an unwarranted intrusion in matters concerning the Commission's internal administration. Granted that there are instances of independent judgment and action on the part of government agencies over which the courts have no control,[15] having become a party to litigation the EEOC must be bound by the court's rules. It cannot litigate on its own terms.
 
 
 29
 Furthermore, the EEOC has an avenue for relief if it is dissatisfied with any provision of the Consent Decree. The Decree itself provides that the EEOC may apply for such amendments and modifications as its experience may dictate.[16] Had this litigation run its normal course, a point would have been reached at which the EEOC would probably have been asked to submit a proposed decree consonant with the court's decision. Its present position is not substantially different. The District Court has left open to the EEOC the power and responsibility to apply for modification of the Decree. The EEOC can make full use of this power for any constructive purposes it envisages in order to promote the interests of the public it represents.
 
 Conclusion
 
 30
 It would be inopportune and unfortunate to permit this appeal to serve as a tool for destroying a settlement to which the private parties have agreed, in which the court has concurred and from which the EEOC improperly withdrew its participation at the last minute and without explanation. We cannot condone the conduct of the EEOC in this case or sanction its abandonment of the litigation. The Commission is not the exclusive vindicator of the public interest in Title VII of the Civil Rights Act of 1964. Having entered the litigation it cannot be permitted to overtake and supersede the function of the court, which in the last analysis is the guardian of the law and of the rights and obligations of the litigants under that law.
 
 
 31
 The judgment is affirmed.
 
 
 
 *
 Honorable Edmund L. Palmieri, Southern District of New York, sitting by designation
 
 
 [1]
 The EEOC sought permissive intervention pursuant to Fed.R.Civ. P. 24(b) and sections 705(g)(6) and 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972, 42 U.S.C. §§ 2000e--4(g) (6), 5(f)(1)
 
 
 [2]
 The District Court's finding in section No. 7(c), which is fully supported by the record, states:
 
 
 [7]
 (c) In a hearing before this Court on May 3, 1974, when the Court was expressing its concerns about the manageability of the requested class action, the EEOC through both Mr. Hurwitz and Mr. Chris Roggerson, Regional Attorney for the EEOC, again represented to the Court that the EEOC was able and willing to assume management of any relief ordered by this Court:
 'MR. HURWITZ: We have the responsibility, your Honor, of policing all Title VII decrees. We have the responsibility right now, and we are actively pursuing it in Seattle, right now, in a rather large lawsuit.
 'I know of another one in San Francisco that involves a situation of perhaps 60,000 to 70,000 union members that we are policing. That is our responsibility under the law.
 'THE AUDIENCE: May it please the Court.
 'THE COURT: Yes, sir.
 'MR. ROGGERSON: My name is Chris Roggerson, and I am the Regional Attorney for the EEOC Litigation Center in San Francisco.
 'I am prepared to commit the services of the Litigation Center to cooperate with the Court in whatever manner is appropriate to work out the mechanics that we are dealing with in this situation.'
 The Commission pledged its assistance on numerous other occasions. In 'Plaintiffs' and Plaintiff-Intervenor's Class Action Management Proposal,' the Commission noted:
 In joining private plaintiffs in this management proposal the Commission notes the court's concerns over manageability and accepts as its overriding responsibility the job of making Title VII work with private plaintiffs through the judicial system . . .. The Commission reiterates its pledge of cooperation to supply whatever resources and expertise the Court might desire from the Commission to assist this Court in the management of this case.
 
 
 [3]
 The proposed Consent Decree was delivered to EEOC Regional Counsel in San Francisco on November 17 and to the EEOC General Counsel in Washington, D.C. on November 19
 
 
 [4]
 THIS MATTER having come before the Court upon Plaintiffs' and Defendants' Petition for an Order directing Intervenor EEOC, through its General Counsel, William Carey or whomever (sic) is authorized to appear on behalf of Mr. Carey and bind EEOC, to enter into the Consent Decree which is attached to the said Petition and, it appearing that Intervenor should appear to show cause, if any it has, why Intervenor should not be required to execute the Consent Decree, the Court being fully advised, it is hereby,
 ORDERED, ADJUDGED AND DECREED that Intervenor EEOC, through its General Counsel William Carey or whomever (sic) is authorized to appear for Mr. Carey, be and is hereby required to appear at 1 p.m., November 25, 1974, or as soon thereafter as the matter may be heard, in the court . . . then and there to show cause, if any it has, why Intervenor should not be required to execute the Consent Decree.
 
 
 [5]
 The Order, filed that day, read in pertinent part (R. 593):
 . . . it appearing further that the Intervenor EEOC has failed to provide at said hearing any representative having authority to bind the EEOC, as was ordered; it appearing further that the Intervenor EEOC has failed to show cause why it should not be required to excute the Consent Decree and that the EEOC has failed to execute the Consent Decree; the Court being fully advised, it is hereby
 ORDERED, ADJUDGED AND DECREED that the Intervenor EEOC is dismissed with prejudice from this lawsuit, except for the administration of any Consent Decree entered herein, and is permanently enjoined from asserting against Defendants any claims or causes of action. . . . (Italics supplied.)
 
 
 [6]
 These findings of fact are as follows:
 '19. During the course of negotiations over the next 24-hour period (beginning on November 25) plaintiffs and defendants made numerous modifications in the proposed Order to satisfy concerns of the EEOC. However, none of the representatives of the EEOC in attendance during the negotiations had authority to approve the changes made.
 '20. On November 26, 1974, a further hearing was held on the Order to Show Cause. Despite the Court's statement to Mr. Robinson the day before, Mr. Carey was not in attendance, nor was anyone else with the authority to bind the EEOC.
 '21. The EEOC was given full and timely notice that it was required by the Court to have someone in attendance on November 25 and November 26 with authority to bind the EEOC to a consent decree. The Commission was given every opportunity to comply with that Order, including the further request on November 25, 1974 that Mr. Carey be in attendance. At no time did a party representing the EEOC, with authority to bind, appear before the Court in response to the Order to Show Cause.
 '* * *tha
 '24. Failure of the EEOC to send a representative to these negotiations with the authority to bind the EEOC has precluded definitive negotiations and is violative of the Court Order.
 '25. The time and expense to all parties, including the expense to the public for further preparation of this case and at least a three-month trial dictated a most serious effort to resolve this litigation. It was critical that the EEOC have a person with authority to bind the EEOC available to negotiate with all parties because the case was scheduled to go to trial on December 16, 1974 and the plaintiffs and defendants had agreed on a temporary suspension of all discovery and pretrial preparation pending these critical negotiations. The EEOC's failure to comply with the Court Order and send someone who could bind the EEOC has unfairly and severely prejudiced all parties.' (R. 648--649)
 
 
 [7]
 Rule 41(b) provides in applicable part:
 For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication upon the merits.
 
 
 [8]
 42 U.S.C. § 2000e--5(f)(5) says in part:
 It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited.
 This appeal has added another year to the history of this case, increasing the urgency for its conclusion.
 
 
 [9]
 The intention of the court was repeatedly brought to the EEOC's attention during the court's hearing on November 25. As soon as introductions of counsel were completed the first exchange between the court and counsel dealt with the Show Cause Order:
 'THE COURT: And the order to show cause, was that the intervenor EEOC through the General Counsel, William Carey, or whomever (sic) is authorized to appear on behalf of Mr. Carey and bind EEOC to enter into a consent decree which was also served. This is the return, and as I understand it, there is a question as to the authority of those individuals who are appearing for the EEOC.
 'Mr. Robinson would you like to clarify your position?
 'MR. ROBINSON: Your Honor we understand this order to show cause is an order to show cause requiring that we come with the authority to enter into this consent decree which is attached to the order or else to show cause as to why we should not be required to enter into that decree. We are here prepared to show cause to the court why we should not have been required to enter into that decree.
 'THE COURT: Yes. Do I understand that you have authority to appear on behalf of Mr. Carey and bind the EEOC?
 'MR. ROBINSON: No, your Honor, I do not have the authority to bind Mr. Carey to a decree which he has never seen.
 '* * *BIN
 'THE COURT: So Mr. Carey is not here and no one who is authorized to bind the EEOC is here?
 'MR. ROBINSON: No.
 'THE COURT: So I will take under advisement for the moment whether or not in the court's opinion this is a contempt of the court's order.'
 Later in the hearing the Court commented:
 'The order to show cause directed to Mr. Carey is not I don't think, couched in terms of requiring Mr. Carey or somebody to come out here and sign this consent decree. The purpose of the order to show cause was to have Mr. Carey or someone out here who could negotiate and bind the EEOC during the negotiations . . . No one is telling the EEOC they have to sign something which they feel is contrary to the law. However the court does feel that in view of the fact that the attorneys who originally represented the EEOC on the spot apparently were doing so without authority, that there comes a time when somebody in authority has to sit down and work out the details. That was what the order to show cause was meant to bring about.'
 
 
 [10]
 Rule 60(b) reads in part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment.
 
 
 [11]
 Williams v. First Nat'l Bank, 216 U.S. 582, 595, 90 S.Ct. 441, 54 L.Ed. 625 (1910); Clarion Corp. v. American Home Products Corp., 494 F.2d 860, 863 (7th Cir. 1974); Cities Service Oil v. Coleman Oil Co., 470 F.2d 925, 927 (1st Cir.), cert. denied, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1972); Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197, 1199 (1969); Richards Construction Co. v. Air Conditioning Co. of Hawaii, 318 F.2d 410 (9th Cir. 1963)
 The legal compulsion toward voluntary resolution of disputes was given increased significance in Title VII cases by Congress which made the conciliation process the core of Title VII. Until the 1972 amendments to Title VII, the EEOC could not litigate. Even now, the statute states that the EEOC 'shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion' before resorting to litigation. 42 U.S.C. § 2000e--5(b).
 We are informed by the defendant-appellee's brief that the EEOC's administrative procedures in this case did not advance beyond the investigative stage. In General Insurance Co. v. EEOC, 491 F.2d 133 (1974), this Circuit upheld a trial court's determination that the Commission's investigation was over broad. By the time of this decision, the defendant-appellee tells us, the EEOC had intervened in the present suit, and never followed through on its administrative investigation. Thus, due to its procedural posture, this dispute has not had the benefit of the pre-litigation conciliatory process provided for in the statute.
 
 
 [12]
 See Administrative Office of the United States Courts, 1975 Annual Report of the Director, XI--74 to XI--83; Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); American College of Trial Lawyers, Report and Recommendation of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure, at III (1972)
 
 
 [13]
 In Dalrymple v. Pittsburgh Consolidation Coal Co., 24 F.R.D. 260, 262 (W.D.Pa.1959), plaintiff's action was dismissed when counsel arrived unprepared for a pretrial conference without having requested additional time contrary to local rules, which further provided: . . . If there is a failure to comply with the pretrial rules, the Court may effect such penalties and sanctions as in the judgment of a judge the circumstances warrant
 
 
 [14]
 See note 11 supra
 
 
 [15]
 Hoving Corp. v. FTC, 290 F.2d 803 (2d Cir. 1961); Dyer v. SEC, 291 F.2d 774, 781 (8th Cir. 1961). See generally Medical Comm. for Human Rights v. SEC, 139 U.S.App.D.C. 226, 432 F.2d 659, 674 (1970), vacated and remanded for dismissal as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972) (dicta); 4 K. Davis, Administrative Law Treatise ch. 28, especially § 28.06 (1958, Supp.1970)
 
 
 [16]
 'The Court retains jurisdiction of this action for entry of such orders as may be necessary to effectuate the provisions of this Decree, and to make changes or amendments to the Decree upon application of counsel for EEOC, for Plaintiffs, or for Defendants without further notice to the class.' Consent Decree at 3